IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE ARTHUR SULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:17-CV-151-MHT-JTA |
| | ) | [WO] |
| MS. HURT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Plaintiff Willie Sullen ("Sullen"), an inmate incarcerated at the Bullock Correctional Facility when he filed this *pro se* civil rights action under 42 U.S.C. § 1983, seeks to challenge the actions of correctional officials regarding his classification as a restricted offender. Sullen brings suit against Commissioner Jefferson Dunn, Director of Classification Sandra Conway, Assistant Classification Director Angie Baggett, Classification Review Board Analyst Angela Lawson, Classification Specialist Laqwan Hurt, and Associate Commissioner Grantt Culliver.  For relief, Sullen is asking for damages, injunctive relief, court costs, and expenses. Sullen requests trial by jury. Doc. 8 at 2–8.

Defendants filed a special report and supporting evidentiary materials addressing Sullen's claims for relief. Doc. 29.  Defendants deny they acted in violation of Sullen's constitutional rights. Upon receipt of Defendants' special report, the court entered an order which provided Sullen an opportunity to file a response to Defendants' report.  Doc. 30.  This order advised Sullen his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 30 at 1–2. The order further cautioned Sullen that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be

undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as  a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion . . . in accordance with law." Doc. 30 at 2.  Sullen responded to Defendants' special report, *see* Doc. 35, but his response does not demonstrate there is any genuine dispute of material fact. The court will treat Defendants' report as a motion for summary judgment and resolve this motion in their favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Sullen to establish, with appropriate evidence

beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein*, 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not

conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Sullen fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A.   Sovereign Immunity

To the extent Sullen sues Defendants in their individual and official capacities, they are entitled to sovereign immunity from monetary damages in their official capacities. Official

capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."

*Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (citation and quotation marks omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

   In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B.      Injunctive Relief**

Sullen seeks injunctive relief against Defendants. Because Sullen is no longer incarcerated, his request for injunctive relief is moot.[1] The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). There is no indication Sullen will be returned to prison, much less be returned in the immediate future. "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (citation and quotation marks omitted); *see Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation and quotation marks omitted) (observing that "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past."). As it is clear from the pleadings and records before the court that Sullen is no longer incarcerated, any request for equitable relief is moot.

**C.      Qualified Immunity**

In response to Sullen's allegations, Defendants argue they are entitled to qualified immunity in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32

---

[1] During the pendency of this action Sullen was released from prison. *See* Docs. 44, 48.

(2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the conduct about which Sullen complains occurred. Sullen must, therefore, allege facts that, when read in a light most favorable to him, show Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Sullen must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty*., 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case

law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**D.    The Constitutional Claims**

Sullen challenges as violative of his constitutional rights prison officials' decision to maintain, or not remove, his classification as a restricted offender. Prior to designating him as a restricted offender, Sullen states he had been assigned the "S" suffix, but it was subsequently removed by prison classification officials after dismissal of the state criminal case which had triggered application of the sex offender classification. The result of the state court action, Sullen contends, resulted in there being no sex offense on his record, and therefore, nothing in his criminal record warranted his classification as a restricted offender. But Sullen complains he remained classified as a restricted offender which made him ineligible for community placement programs and lower security level institutions. Defendants' application of the  "R" suffix to his prison classification, Sullen claims, resulted in a violation of his rights to due process and equal protection. Doc. 8 at 5–8.

### 1.    *Classification*

Sullen challenged his classification as a restricted offender. He contends nothing in his record of convictions nor his pre-sentence investigation ["PSI"] report warranted the restricted offender classification. Doc. 8.

The evidence submitted by Defendants to support their dispositive motion reflects they were not responsible for making the decision to apply the restricted "R" suffix to Sullen. That decision rested with the prison officials who were  members of the Central Restriction Review Committee ["CRRC"] and who approved placement of the "R" suffix to Sullen in January 2012. According to Sullen's prison records, during his incarceration at the Fountain Correctional Facility in November of 2011, classification personnel reviewed his classification as a sex offender noting he had entered a guilty plea to rape in 1972 which was overturned on appeal and nolle prossed. Sullen then entered a guilty plea to four counts of second-degree burglary. Classification personnel observed Sullen had no conviction for a sex offense and determined he should be submitted to the CRRC for review of the restricted offender status because of the details of his crime. The request for review submitted to the CRRC reflects:

> Request for review for restricting inmate [Sullen] under # 1 of the restricted categories:
>
> Inmate Sullen plead guilty to Rape in 1972, but the conviction was overturned on appeal and Nolle Prossed. Per old Progress Reviews, it appears as though at least a number of Sullen's prior Burglary and Assault convictions had sexual details, though he has never been convicted of a sex offense.

Members of the CRRC approved Sullen's classification as restricted offender concluding such classification fell within the criteria of the Classification Manual based on the details of some of his offenses. Docs. 29-1, 29-2, 29-3, 29-4, 29-5, 29-7.

The Alabama Department of Corrections' ["ADOC"] classification manual indicates the following category of inmates . . . require review for the "R" suffix: "[i]nmates whose record (past or present) indicate[s] that a sex offense did occur in the commission of an offense, an indictment for the sex offense was returned, but for which there was no prosecution due to plea bargaining or other considerations. . . ."  Doc. 29-1 at 5. Under the ADOC's classification rules and  regulations, Defendants maintain the details underlying some of Sullen's crimes designate him as eligible for classification as a restricted offender although he was never convicted of any sex offense.  Based on a policy adopted by the ADOC for restricting certain violent offenders from participating in the work release program and being housed in community work center settings due to the nature of their current or prior convictions, Sullen was deemed a restricted offender because of sexual details underlying some of his convictions.  The CRRC reviewed Sullen's "Restricted" status in January 2012 and  deemed the "Restricted" offender status for him was warranted under agency classification criteria. Doc. 29-1 at 1–12; Doc. 29-2 at 1–5; Doc. 29-3 at 1–2.

Sullen asserts Defendants violated his constitutional rights by not recommending his restricted offender status be removed or by not granting his request for removal of such classification. According to Sullen, Defendants' decision to maintain his classification as a restricted offender was capricious, malicious, and unreasonable because he was never convicted of a sex offense and the negative information in his PSI report did not warrant the restriction.  Doc. 8 at 5–7; Doc. 35.

An inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate "has no constitutionally

protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir.2008) (per curiam) (*citing Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that Congress has given prison officials full discretion to control conditions of confinement, including prisoner classification)). Consequently, prison officials may assign inmates to any security classification level they choose without necessarily violating any constitutional right of the inmates. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Hewitt v. Helms*, 459 U.S. 460 (1983). Moreover, a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *See Moody*, 429 U.S. at 88 n. 9 (noting the Constitution itself confers no right upon an inmate to any particular custody or security classification); *Meachum*, 427 U.S. at 225 (explaining that "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Because Sullen has no constitutional right to a specific classification or security status, correctional officials may change his classification for a good reason, a bad reason, or no reason. Thus, the decision to not remove or recommend for removal Sullen's classification as a restricted offender did not, without more,  violate his constitutional rights.[2] Defendants are entitled to qualified immunity on this claim.

### 2.   *Due Process*

Sullen argues that Defendants' decision to classify him as a restricted offender, or to maintain his classification as a restricted offender, was made arbitrarily, capriciously, and maliciously in violation of his right to due process. This claim entitles Sullen to no relief.

---

[2] While Sullen maintains he has a constitutional right to not be labeled a sex offender (Doc. 8 at 6), Defendants' evidence reflects the "R" suffix does not identify an inmate as a sex offender. *See* Doc. 29-3 at 2.

As explained, a prisoner's custody level is not a constitutionally protected interest—correctional officials may assign Sullen to any classification level without implicating due process rights or protections. *See Moody*, 429 U.S. at 88 n.9. Therefore, to successfully state a due process claim regarding Defendants' classification of him, Sullen must show Defendants' conduct or actions in denying him, or restricting him from, a lower security status was done "maliciously or in bad faith." *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir.1986) (holding that a classification system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith").   The consideration of the details surrounding an inmate's criminal conviction(s) when determining the inmate's custody classification, however, does not implicate the Constitution as it is rationally related to the legitimate state interest of ensuring that only those inmates best suited for lower custody classifications are so  placed.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th  Cir. 1988) (holding that the denial of eligibility for incentive time benefits to inmate who received sentences of over 10 years "is rationally related to the legitimate purpose of preventing the early release of serious offenders [and] does not violate the equal protection clause or due process clause").

Here, the evidence reflects the CRRC is provided with the responsibility of determining which inmates receive a restricted offender status. Additionally, the record shows, per the CRRC's notations, that Sullen received a classification as a restricted offender based on the committee's view of the nature and/or circumstances of Sullen's committed crimes. *Id*. at 852. Prison officials' reliance on the facts underlying Sullen's prior convictions to classify him as a restricted offender and deny him a lower security and/or custody level is not violative of the Constitution as it is the nature and circumstances of the crime, not the type or nomenclature of the conviction, which

legitimately may be used by prison authorities to determine the security and classification status of prisoners. *Hendking*, 781 F.2d at 852. Sullen's disagreement with prison officials' determination he meets the ADOC's classification criteria for restricted offender status does not make their decision arbitrary or capricious. Further, Sullen presents no evidence indicating that Defendants engaged in arbitrary or capricious action by not recommending his removal as a restricted offender or by not granting his request for such removal. *See Thornton*, 852 F.2d at 527. The court, therefore, concludes that Defendants' conduct in relying on the nature or circumstances of the crimes for which Sullen was convicted to determine his classification as a restricted offender or to maintain his restricted classification status, was "not arbitrary and capricious, but reasonable and appropriate." *Hendking*, 781 F.2d at 852. Because Sullen's allegations fail to demonstrate a due process violation, Defendants are entitled to qualified immunity on this claim.

### 3. *The False Information Claim*

Sullen complains that Defendants relied on false and erroneous information to deny his request for removal of the "R" suffix from his classification status. Doc. 8 at 6; Doc. 35 at 3. Defendants, Sullen claims, placed him in a restricted category even though his record of conviction contains no sex offense. Doc. 35 at 2.

The evidence reflects that the decision to classify Sullen as a restricted offender and maintain him in a restricted offender classification status stemmed from the existence of sexual content associated with his prior criminal offense history. Doc. 29-1 at 7–12; Doc. 29-2 at 5–10, Doc. 29-3 at 4–5, Doc. 29-4 at 2–3. While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir.1991), establishes a constitutional claim for the knowing use of false information by prison officials, this case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982). In *Slocum*, the Court held that prisoners state no due process claim by merely asserting that

erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).

Here, Defendants assert the information utilized to determine Sullen's classification status indicated his rape conviction had been overturned and nolle prossed, but the details of his prior criminal history reflected he met the classification criteria for a restricted offender due to the sexual content associated with a prior offense. *See* Doc. 29-1 at 1–2; Doc. 29-2 at 1–3; Doc. 29-3 at 1–2; Doc. 29-5 at1–2; Doc. 29-7 at 1–2. There is no admission by Defendants that the information used in determining Sullen's classification status is false, erroneous, or incorrect. *Id.* Sullen has presented no evidence which indicates Defendants knowingly used false information during the classification process or to determine his classification status. Sullen's conclusory assertions regarding the use of false information does nothing more than raise the possibility that information in his records may be false, and this mere possibility is insufficient to provide a basis for relief. *Monroe,* 932 at 1142; *Jones,* 279 F.3d at 946. Because Sullen fails to establish a genuine dispute about whether Defendants relied on admittedly false information in their decision to either maintain his classification as a restricted offender or their decision not to remove the "R" suffix, they are entitled to qualified immunity on this claim.

### 4.    *The Discrimination Claim*

Sullen alleges Defendants discriminate against black inmates regarding application of the restricted offender classification designation as compared to "white inmates similar or worse." Doc. 8 at 8. According to Sullen, white inmates with violent convictions (murder) have been placed in community-based programs and minimum-out custody while Defendants discriminatorily applied the restricted offender classification guidelines to classify him as a restricted offender

14

based on the details of a prior offense. Doc. 35 at 3. Sullen maintains "he is similarly situated with other prisoners who received more favorable treatment . . . and ha[s] been discriminated against . . . by these defendants." Doc. 35 at 3.

"Despite the tendency of all rights to declare themselves absolute to their logical extreme, there are obviously limits beyond which the equal protection analysis may not be pressed. . . . The Fourteenth Amendment does not require absolute equality or precisely equal advantages,. . . nor does it require the State to equalize [prison] conditions." *Ross v. Moffitt*, 417 U.S. 600, 611–612 (1974) (footnote omitted) (citations and quotation marks omitted); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). To establish a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that: (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–947 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–933 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318–1319 (11th Cir.2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 264–265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S.

256, 279 (1979) (footnotes and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Since this case is before the court on a properly supported motion for summary judgment, Sullen bears the burden of producing evidence which would be admissible at trial sufficient to show: (i) the defendants provided more favorable treatment to other similarly situated inmates—*i.e.*, inmates whose record (past or present) indicates that a sex offense occurred in the commission of an offense, or an indictment for a sex offense was returned, but there was no prosecution due to plea bargaining or other considerations; and (ii) the decision to deny him favorable treatment resulted from intentional discrimination. *Celotex*, 477 U.S. at 322–324; *Anderson*, 477 U.S. at 249 (explaining that to preclude summary judgment, plaintiff must present significant probative evidence showing that defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir.1987) (observing that intentional discrimination by the defendants in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment, nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (explaining that conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Sullen makes conclusory allegations regarding a denial of equal protection. The only probative evidence before the court demonstrates the actions undertaken in Sullen's classification process were based solely on the details underlying a prior offense.  As explained, an Alabama inmate has no constitutional right to a particular custody classification. Absent the existence of a constitutionally protected liberty interest, this court must "look to see if persons similarly situated to the plaintiff"—persons with similar details in their criminal record—"have been treated differently" based on a constitutionally impermissible reason. *Hammond*, 669 F. Supp. at 1563; *Sweet*, 467 F.3d at 1318–1319. Although Sullen alleges that "other similarly situated inmates" received more favorable treatment by not being classified as restricted offenders, he identifies no inmate with an offense record similar to his who was treated differently. But even assuming that the "other similarly situated inmates" have been convicted of similar offenses, Sullen does not specify the facts underlying the convictions or offenses of these other inmates to demonstrate they were actually similarly situated to him. Thus, Sullen identifies no other inmate with similar offense details towards whom Defendants acted in a more favorable manner, and his "equal protection claim necessarily fails because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.

Sullen makes the conclusory legal assertion that Defendants' actions about which he complains resulted from racial discrimination because similarly situated white inmates were not treated in the same manner.  The evidentiary materials filed by Defendants establish that Sullen's classification as a restricted offender was based on facts and circumstances wholly unrelated to his race and was not the result of purposeful discrimination. *Norvell v. State of Ill.*, 373 U.S. 420, 423 (1963) (holding that "[e]xact  equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment."]. A showing of disparate impact upon two racially

diverse inmates is insufficient to demonstrate an equal protection violation. *E & T Realty*, 830 F.2d at 1114; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). The arbitrary application of administrative rules likewise does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114.   Other than Sullen's conclusory allegation that the actions of Defendants were intentionally discriminatory, the record is devoid of any proof that their conduct about which Sullen complains occurred because he is black.   Thus, under applicable federal law, the allegations made by Sullen are insufficient to show an equal protection violation and Defendants are entitled to qualified immunity on this claim.  *Celotex Corp.*, 477 U.S. 317.

### 5.     *Respondeat Superior*

Sullen wrote letters to Commissioner Dunn about "the wrongful application of the "R" suffix but complains he received no response. Doc. 8 at 7. Dunn denies any personal knowledge or involvement with the claims made the basis of Sullen's amended complaint and maintains that as Commissioner he does not control the daily operations of the prison facilities. Doc. 29-6 at 1–2. To the extent Sullen complains Dunn failed to investigate his inquiry regarding application of the "R" suffix to his (Sullen's) classification status, he is entitled to no relief. "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dept. of Soc. Svs.*, 489 U.S. 189, 196 (1989). Sullen's claim against Dunn, to the extent it is based on the theory of *respondeat superior,* likewise entitles him to no relief.

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation and quotation marks omitted). "Because vicarious liability

is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials could attach to Dunn only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (explaining that "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing."). "[T]he inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995) (citation and quotation marks omitted).

Here, the court finds Sullen presents no support for his allegation against Commissioner Dunn. Specifically, Sullen offers no evidence that Dunn had any personal involvement in the actions about which he complains. Doc. 29-6. The court finds nothing in the record to establish the requisite causal connection between Dunn and the alleged constitutional deprivation. *Cottone*,

326 F.3d at 1360; *Iqbal*, 556 U.S. at 676.  Accordingly, Defendant Dunn is entitled to qualified immunity.

### 6.      *Violation of Agency Regulations*

To the extent Sullen alleges Defendants violated ADOC regulations when they classified him as a restricted offender because his convictions of record did not warrant such classification (Doc. 8 at 8), this claim entitles him to no relief. An alleged violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. That state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimension. *Sandin*, 515 U.S. at 481–82 (observing that prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (explaining that mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (explaining that "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations ...."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, failing to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding that "failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation."); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527–28 (11th Cir. 1987) (finding that violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment be GRANTED.

2.  This case be DISMISSED with prejudice.

3.   Judgment be ENTERED in favor of Defendants.

4.  Costs be TAXED against Plaintiff.

It is

ORDERED that **on or before February 20, 2020**, the parties may file an objection. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 5th day of February, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE